The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H. D. Armond presiding. Morning, counsel. We'll call case number 4-220468, People of the State of Illinois v. John Michael Dean. Good morning, counsel. For the appellant, please state your name for the record. Good morning, Your Honor. This is Gregory Peterson of the Office of the State Appellate Defender. Thank you, Mr. Peterson. Counsel, for the appellate, could you please state your name for the record? Matthew Goldman, for the people, Your Honor. Thank you, Mr. Goldman. Mr. Peterson, you may proceed. Thank you. May it please the court, counsel? As previously stated, I'm Gregory Peterson. I'm here on behalf of John M. Dean. I'm likely to call him Mike because that's what he goes by in real life. By way of focusing the argument today, I will say I'm intending to present argument primarily on issues 2 and 3 in my brief, partly on 1. 3 is meant to be the focus today. I'm happy to answer questions about 4, of course. There were serious flaws in the state's case here, and I'm not getting around the fact that Mr. Dean made a very damaging admission on the scene and then took months to get away from that admission. But what we have here is an argument that this was suicide, not homicide, that is supported by the gunshot residue, that is supported by the bruises on Ms. Newaner's right hand, supported by the layout of the gun, which is a right-handed gun, and especially supported by the testimony of the two forensic experts that said, even when faced with considerations like Mr. Dean's admission, with considerations like Ms. Newaner being female and suicide by firearm being less common with females, reiterated their conclusions. Suicide, not homicide. There are no forensic experts that testified this was a homicide. But even taking aside the weakness of the state's case, looking at this case as a whole, this was not a fair trial. And the reason for this, the primary reason for this, is Officer Nathan Rauch's misconduct. This is not a case where a police officer has been found liable in another case, in a 1993 suit, something like that. This is not a case where a police officer has a history of fabrication that I'm pointing to. This is a case where I can point to the lead investigator's attempt to fabricate incriminating evidence. Two years later, Mr. Rauch essentially broke into the police station. He gained unauthorized access to the police station, and he added a confession by my client to his police report, one that the camera shows was not there. And we know that the camera shows it because his body cam was working. That's not what he told his chief of police. We know that he told in his reports that the EMTs had secured the gun, but we can hear him secure it. This handling of the gun, which he attempted to obfuscate, which he attempted to hide, and which he later straight up lied about, including raising concerns of perjury and forcing him to take the Fifth Amendment, this rendered the DNA's chain of custody fatally unreliable. Now, I understand the Prima Fascia case for chain of custody. Yes. Let me ask you a question. Didn't the trial judge say that it was able to look at the video and could rely upon the video for concluding that the chain of custody was okay, except for maybe the weight it should be given? That's true that the trial court thought that, Your Honor, but I have two concerns with that. First of all is we don't have the video of the entire time. We only have the video of Mr. Rauch bringing the gun to the car, where it then remained for six hours, according to Mr. Rauch and Mr. Rauch alone. It's his word that says he didn't go back and touch the gun before he gave it to the crime scene investigator. And on this record, his word as to this case is worthless. Secondly, one of the trial court's main concerns, one of the main reasons that this goes to weight rather than admissibility, is that Rauch was wearing gloves. That explains why his fingerprints aren't on the gun. But it doesn't answer the key question here. I would turn Your Honor's attention to page 333 of the ROP in this case, where a forensic expert testified about the effect of repeated handling on a gun. DNA comes off. The DNA that is most likely to come off is the DNA that was put on first. The most recent DNA is almost in a way going to be louder. It's going to stay there. So Mr. Rauch's handling, whether it is deliberate tampering or simply careless handling that he's willing to lie to his chief of police about, that will take DNA off the gun. So I want to be very clear. I'm not alleging that Mr. Rauch carefully devised a plan to remove Ms. Newaner's DNA from the gun. I'm simply saying, by the uncontradicted expert testimony about how handling affects DNA, we know that any extra handling is going to take off the DNA that was there by the person who touched it first and who touched it least. And everyone agrees in this case that Mr. Dean touched the gun last. First and least? First and least, Your Honor. And here, given that it's Mr. Dean's gun, given that he's grabbing it and holding it to himself, he's touching it more than Ms. Newaner is, even under the defense theory of the case. So the fact that he touched it in itself would remove some of the DNA that was there before. Then after he touches it, his friend Jeremy picks up the gun and moves it. Then Officer Rauch picks up the gun. Then Officer Rauch fiddles with the gun. You can hear the slide coming back as he checks it. You can hear a muttered expletive as I believe what he says, holy. You can hear him fiddling with the gun. And these are all things that he denied until he was confronted with the video that he claimed did not exist. This is about more than the effect this had on the actual results of those DNA tests. It's about the fairness of the trial. I would have been absolutely comfortable raising this issue as second-pronged plain error. But I don't need to. It's preserved. It's the state's burden to show that this was harmless beyond a reasonable doubt. We also have concrete evidence of prejudice here in the form of the jury deliberations. If the DNA, there's some indication in the state's brief, particularly the state's brief issue one, the reasonable doubt argument, that Mr. Dean's, what the state characterizes as a confession. I disagree about that characterization. But Mr. Dean's very damaging admission is enough to moot out all of the other issues here. He said he shot her. Why do we care about the investigation? Well, the jury cared about that. After seven hours of deliberation, the jury was asking if they could see the gun and if they could see the gun for a reason related to the DNA. I'd also point to the reason that they wanted that gun because that, the jury questions being answered differently. No, you can't see the gun when it's about where the exhaust port is in the operation. Yes, you can see the gun when it's out, when it's about DNA. That is something that concerns me. But I think the bigger problem here is that we see from the phrasing of the second question that the jury is drawing conclusions from facts that aren't in evidence. They're asking to see the gun so they can see the ridges and the grooves that the DNA was collected from. Nothing in this record says that the DNA was collected from ridges and grooves on the gun, just from the handle, just from the barrel and the trigger. The jury's deciding that DNA is more likely to stick in those grooves. That's possible, but that's not what the DNA expert told them. That's an assumption they're making. I'd also point, particularly with these DNA results, to the fact that the jury is essentially drawing a negative conclusion here, right? The fact that Mr. Dean's DNA is on this gun does not matter. We all know that Mr. Dean grabbed the gun and used it to shoot himself. But the fact that Ms. Newaner's DNA was not on the gun, that's the key concern here. The forensic expert swabbed the barrel of the gun, swabbed the tip of the gun. Her DNA didn't show up. But everyone agrees that the tip of that gun touched her in the temple. Now, whether it was Mr. Dean holding the gun as the state contends or Ms. Newaner holding the gun as Mr. Dean contends, it's a contact wound. We know it touched her. And then we know it touched Mr. Dean after that. And the testing shows Mr. Dean's DNA and not hers. This is exactly what the forensic expert warned us would happen. The last touch would remain. Future actions would obliterate prior DNA. So what we have here is one of the most inappropriate forces of conduct by an investigating officer that you can imagine. And it's about a part of this case that was crucial to the jury's decision. That's reversible error on its own. You also, I'd like to turn to this lesser included instruction. I understand that reckless conduct feels like a large step down from first degree murder. I understand that usually when this court is dealing with lesser included offenses on a first degree murder case, it's likely to be something like second degree, involuntary manslaughter, something like that. But the key here is reading from the statute defining reckless conduct. A person commits reckless conduct when he or she recklessly performs an act or acts that cause bodily harm to or endanger the safety of another person. And that's crucial to what's going on here. Mr. Dean's testimony is that he recklessly did things that endangered Miss New Honor's safety, fatally endangered her safety. What we're essentially dealing with here is he's saying that he's responsible for her death. Maybe even that he caused it in some moral sense. But he was not the proximate cause of it. Do you have a case that holds that reckless conduct is a lesser included offense of first degree murder? No, Your Honor. But I do not think that this court would be stepping outside the bounds of what the other cases say. The canonical example of a reckless... Do you agree we would be the first case that's ever said that? To the best of my knowledge, that specifically, yes. But this court is presented with the facts that allow it to do that. It's charging instrument approach. And this charging instrument put Mr. Dean on notice. And then it's do the facts allow the jury to acquit him of first degree murder while convicting him for reckless conduct? I think the canonical example of a lesser included instruction that would be denied and rightfully so would be if you take a lead pipe and brutally bludgeon someone in the head and they die and you're charged with first degree murder. And you ask for simple battery. Well, what you've done is simple battery, but there is no way that a jury can say you did actually hit him with that lead pipe, but we think the death was unrelated. If there was a medical examiner saying maybe the death was unrelated, that would be a case where that would be available. But here, the key difference is this endanger the safety of. This idea that Mr. Dean feels like he's responsible for her death because of his reckless actions, but he did not proximately legally cause it. So I am I'm not asking this court to reduce his conviction to reckless conduct. I'm saying the jury was denied the chance to make that decision. I'm asking this court to give a jury that opportunity. Because if everything Mr. Dean said on the stand is true. And I would remind this court that that is not contradicted by any of the forensic evidence. He's still culpable. He's still done something that is a crime in Illinois. And this is a type of thing that is recognized in the statute books. Encouraging suicide, for instance, is, I believe, a class two felony in Illinois. The reason we're not arguing that that should have been given, for one thing, it wasn't argued below. And for another thing, that requires as an element absolute knowledge that a person is intending to commit suicide. If they say, I think I'm going to kill myself and you say, borrow my gun. That's that. This is not those facts. But given what we have here, these are the facts that allow you to say under this set of circumstances, reckless conduct, as argued here, is a lesser included offense of first degree murder as charged here. And that's the question. It's not an abstract elements approach like the court appeared to use below. Seeing no particular further questions on this line, I would like to touch briefly on the sentencing issue here. Just to emphasize the fact that we're not just dealing with the victim having a daughter as a consideration. We can see it from the trial court's exact phrasing. Thinking about this girl growing up without a mother. That is, at its heart, a consideration of her mother being dead. That's what's going on here. Mr. Dean was punished because the jury found that he killed this woman. And then he was punished additionally because the woman was dead. That's unacceptable. And so unless this court has further questions, I would ask this court to reverse outright on issue one. And if this court doesn't agree with me on that, I would ask this court to grant him a new trial, especially in light of if this court rules for the state on issue one, a retrial would be possible. If the state is confident that it can make this prosecution without the effect of Mr. Rauch's egregious misconduct, it is welcome to do so on retrial. But this was a fatally flawed case from the start. If there are no further questions, thank you. Thank you, counsel. Mr. Goldman, you may proceed. Thank you, Your Honor. Your Honor, I'm going to proceed in the same manner that counsel for the defendant proceeded. I'm going to begin with the sufficiency of the evidence. As this court knows, the question before the court when it's determining whether or not the evidence is sufficient is not weighing two competing theories of what took place and deciding which one it believes. It's deciding whether or not there was evidence sufficient. And when viewing the evidence of the light, most favorable to the state for the jury to convict because they believe the defendant guilty beyond a reasonable doubt. Now, it's true. There was a competing theory presented by the defense of suicide. There was evidence presented for that. But the jury clearly rejected this alternative theory. The jury could have believed those experts. The jury could have believed the defendant. But the jury, when weighing all of this evidence together, chose not to. The the other major point that the defense brings up is Rauch's conduct throughout this case, also Rauch's conduct. Now, this court does not have to approve of what also Rauch did. Certainly, the trial court did not approve of what also Rauch did. And it expressed that in the motion to suppress hearing where it said it did not find officer Rauch to be a credible person. But as defense counsel indicated in his argument just a moment ago, the reason why we know that Rauch isn't credible is because of the video evidence. That's that's the information that the court ultimately relied upon in making its decision about the motion to suppress evidence. And that's ultimately some of the evidence that was relied upon throughout this case. That's how we know that Rauch wasn't telling the truth in certain circumstances. And that's also how we know what really did happen when presented with that objective evidence. Well, Mr. Goldman, let me ask you a question. Mr. Peterson says the gun was in the squad car for, I think he said, six hours. We don't know what, if anything, happened during that time period based on the video or based on any other evidence, do we? That's correct, Your Honor. We don't have a clear indication. It's not it's not as if the cameras were running for seven hours and we could see it undisturbed during that time period. But the suggestion that something untoward happened during that time period at this point is speculative. It's true. Rauch's credibility has been completely destroyed, frankly, due to his actions later on. But the the court was able to look at the fact that he was wearing gloves that he secured in the squad car and ultimately determined that other issues related to that chain of custody went to the weight of the evidence, not the admissibility. And ultimately, the jury could hear this evidence and decide, based upon everything it heard and heard all about what Rauch did throughout this case, decide whether or not that impacted this evidence as far as its weight was concerned, to the extent that it believed perhaps the victim's DNA was on that firearm and was somehow removed. Because the the court decided this went to the weight, not the admissibility of the evidence, the court was essentially acting in its discretion to allow it under what it perceived as a weight issue. Now, Your Honor, as I emphasized just a moment ago, the jury was able to consider all of the issues related to Officer Rauch in this case. This essentially served as a major point of attack for the defense throughout this trial. This is one of their main arguments as to why the defendant should be found not guilty was that Officer Rauch was so incompetent or or not credible that the jury should conclude the defendant was not proved guilty beyond a reasonable doubt. So the the request by the defense to find the cross by the defense for this court to conclude that the defendant was not proved guilty beyond a reasonable doubt is essentially asking the court to reweigh that, that the jury should have concluded that this was not proved beyond a reasonable doubt. Your Honors, I now want to move on to the reckless conduct instruction. Mr. Peterson described how this is essentially the first. If this court were to conclude that such instruction should have been given, this court would be the first to do so. But the problem with issuing this instruction, the reason why the court was correct in denying it is multifaceted. There's a major problem with why there's a major problem with requesting this instruction under these facts. The defense essentially puts up this alternative theory of suicide. But under the facts presented, no reasonable jury could have concluded that there was evidence that fit each element for reckless conduct. Counsel during their initial argument even said that the defendant did not proximately cause her death. That's an essential element of of reckless conduct that they would have had to have shown that the defendant consciously disregarded an unjustifiable risk and in doing so cause. Could have also caused a substantial risk for her. But under these circumstances, there was no conscious disregard. All of defendants testimony, even if it were to be believed, indicates that she was calming down as he approached the kitchen. She was calming down as he got the firearm out of the safe initially and he placed the gun on the counter. At that point, there was no risk to consciously disregard. Certainly, if there was a risk, he wasn't aware of it. Then when he hears the slide being used and he essentially spins around and sees her with the gun in her hand. The words that he used, while not perfect and certainly not the words that I would have used, his words were essentially to put it down. You're not going to do a thing. Now, hindsight's always 20-20. There's always a better way to handle things when you're not in the moment. But under those circumstances, he didn't say, pull the trigger. He didn't say, I dare you. He said, put it down. That's the kind of language that, frankly, if she had followed the situation, even if defendants would be believed, we wouldn't be here right now. If she had followed those words and put it down, she would still be alive. Even if this court believed his explanation of what happened, it still would not amount to a conscious disregard of an unjustifiable risk. Certainly, the defense has not shown that there was proximate cause that anything the defendant did, according to his own narrative, is something where he should have foreseen that she would commit suicide. So because even the defendant's own narrative doesn't fulfill each of those essential elements of reckless conduct, the court was correct in denying that instruction. Now, the defense moved on to the sentencing argument, so I'm going to address that next. The defense's argument in relation to sentencing is essentially twofold. First, that the court should not have considered the loss to the victim's daughter because that was a factor inherent in the offense. And second, that the senseless nature of the offense was not a proper factor as well. The loss of the victim's daughter, this is something that this court recently addressed in the Kelly decision. The court is allowed to look to the effect that a person's death has on the family and consider that an aggravation. As this court recognized in Kelly, not everybody has a family that is close-knit or that relies upon them. Not everybody has people who are dependent on the victim. And in this particular case, it's easy to see how this is a situation where it's different than a person being killed in isolation. In this case, there's a young daughter, and she's going to have to grow up without the advice and guidance of her mother. It's something beyond even losing a spouse, perhaps, where a person is financially independent or doesn't need the guidance of that particular individual as much. So the court's allowed to consider the special effect that the loss of a parent would have on a young child and the things that that child is going to have to go through in life now that their mother is gone. That's something beyond considering the mere fact of a person's death. Now, in relation to the senseless nature of the offense, I cited a handful of cases in my brief. Courts have looked to the senseless nature of a murder as a proper factor that courts have considered. It's been approved by courts of review. There's no indication here that the court was considering some untoward way, specifically considering, for example, that the fact that the state did not prove a particular motive and holding that against the defendant. The court's allowed to consider the fact that the defendant essentially didn't have a provocation or a good reason to do what he did. So, Your Honors, unless there are further questions other than what I've previously articulated, I would simply stand on the strength of my brief. Thank you, counsel. Mr. Peterson, rebuttal. As I discover I'm on mute, Your Honor. I would say that I have three points in rebuttal. I have a quick preliminary point, which is that it's not Mr. Dean's responsibility to offer a reason why he did it. Mr. Dean's contention remains that he did not do it at all. The presumption of innocence holds. But I have three main points in rebuttal. Counsel for the state is telling you, look at the video evidence that proves that Rouch couldn't have tampered. As the state admits, there are hours upon hours of time when we only have Rouch's word for it, and we know his word is valueless. This isn't a situation where it was placed in the evidence locker at the police station and I'm challenging the chain of custody after that. This is a case where it was still in his sole control. And even if it was at the police station, we know that he gained unauthorized access to the police station in this very case. Secondly, the state misstates the elements of reckless conduct. He doesn't need to have proximately caused a death. He doesn't need to have proximately caused harm. He needs to have proximately caused a danger to her safety. And that does that. I would point out that the state has, to some extent, censored what Mr. Dean said at the scene. And with your honor's permission, I'd like to read his actual words here. He turned around. He saw in the middle of an argument that he had thought was calming down, but in the middle of an argument, a woman he had driven to psychiatric appointments, who he had consoled through episodes, holding a gun to her temple. And he said, fucking put it down. You're not going to do a goddamn thing. That's not a reasonable standard of care. That's reckless. It's not intentional conduct. I agree with the state that it's not him saying, I dare you, or him saying, shoot. If that was the case, there would be a very strong case for a lesser included of encouraging suicide. But it's reckless conduct. It's not what any of us would want to do to our loved ones. It's not what we'd want to see done. It's not the standard of care that we want. It is a gross deviation from a reasonable standard of care to swear in the middle of a fight. Counsel, I don't understand how you can assert that that's not what a reasonable person can do. I think it's unsanely. But that's my judgment. I don't know that that stands for the rest of the people in the world. Particularly if someone had been in an argument or was shocked and surprised that that was what was occurring and simply said it that way. Do you add some emphasis to it because he used profanity or probably raised his voice? Does that make it worse? Does that make it outside the realm of what a reasonable person might do? I have two answers, Your Honor. The first is yes. Raising your voice, adding profanity to all that does. But secondly, this is about a lesser included instruction that was not given. The jury should have been given the opportunity to determine whether his conduct was reckless. The jury should have been given that decision to make. And I don't think this court can say that no rational jury could have characterized that as reckless. So we're looking at this in the context of an instruction that was asked for and denied. But just in closing, the state emphasizes that Officer Rauch's misconduct was the main argument. How could it not be? How could this not be the most memorable thing about this case? At the scene that night, he lied. He said the gun had been secured by the EMTs. He told his chief of police that his body cam was off or that his body cam was broken, perhaps in an attempt to hide what he was doing, which was fiddling with the gun. We see that a little. We hear it more. Then two years later, he's fabricating evidence. How is that not the main argument? How is that consistent with concepts of fairness? How is that a fair trial? I'd ask this court to reverse or, in the alternative, remand for a fair trial. Thank you. Thank you, counsel. The court will take this matter under advisement. The court stands in recess.